ALBERT C. FULLER, Plaintiff-Appellant, *v.* STANDARD OIL COMPANY OF INDIANA, *et al.*, Defendant-Appellees.

(No. 70-210;

Third District—November 5, 1971.

Cassidy and Cassidy, of Peoria, for appellant.

Heyl, Royster, Voelker & Allen, of Peoria, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff-Appellant, Albert Fuller, brought this action on a travel accident policy issued by Imperial Casualty and Indemnity Company, Defendant-Appellee. Pursuant to defendant's motion for summary judgment the court decided the issues in favor of defendant and entered judgment against plaintiff on his complaint from which judgment this appeal follows.

On April 27, 1965, Mary Lou Fuller died as a result of a crash of a private airplane. At the time of her death she was the named insured and plaintiff was the beneficiary in a travel accident policy issued by defendant. Defendant denied coverage claiming that the cause of death was not within the coverage afforded by the policy.

In recent years many companies having extensive credit or credit card systems have used such credit customers as prospective sources for the sale of merchandise and other services not directly related to the business of the company. The defendant, Imperial Casualty and Indemnity Company, is a subsidiary of Standard Oil of Indiana and the latter company issued a credit card to Albert and Mary Lou Fuller. As such credit card holders the Fullers received a letter, brochure and application for travel accident insurance from the defendant company in December, 1962. Mary Lou Fuller completed the application as insured, named her husband the plaintiff, Albert Fuller, as beneficiary and forwarded the application to the company in the latter part of December, 1962. The charges therefore were billed against their credit card account effective January 1, 1963. The defendant company issued its insurance policy and delivered the same by mail to the Fullers sometime during the latter part of January, 1963, but according to Albert Fuller, neither of them examined the provisions of the policy.

This dispute arises because of plaintiff's claim that the letter, brochure and application provided different coverage than that afforded by the policy as issued. In particular it is claimed that the letter-brochure included coverage for loss arising out of the operation of private aircraft which coverage was not included in the policy as issued. It is defendant's position that the policy as issued governs the rights of the parties but in any event the provisions of the letter and brochure make no representation that the coverage claimed by plaintiff was included. The advertising brochure contained the following statement, "* * * a policy designed especially for people who travel", "you and your wife can obtain this protection through the credit you have established as a STANDARD credit card customer, just as you purchase gasoline and your other motoring needs" and "BENEFITS: This broad travel accident policy insures you anywhere in the world * * *".

One page of the brochure is entitled, "Principal Policy Provisions". It then proceeds to say, "Insures you anywhere in the world against accidental loss of life, limb or sight resulting from injury sustained while riding as a passenger in (but not as an operator of), boarding or alighting from any air, land or water common carrier (a vehicle licensed to carry passengers for hire); or while in, operating, entering alighting from any private passenger automobile licensed as such by the State or Country of its registry; or through being struck by any automobile or common carrier. The word 'Automobile' means a land motor vehicle not operated on rails or crawler treads and does not mean farm type tractors nor any equipment designated for use principally off public roads." The next four lines describe the benefits namely $25,000 for loss of life or any two members of the body and $12,500 for loss of any one member of the body. This page then indicates that policies will be issued for periods of six months for premium of ten dollars. Then appears a subtitle, "Exclusions" and the description thereof as follows, "The policy does not cover loss resulting from suicide or self-distruction, bacterial infections, medical or surgical treatment, war or act of war, while in the armed forces of any country at war, any vehicle being tested, time tested or participating in races, speed contests or exhibitions." The closing paragraph on this page provides, "The above describes briefly the most significant features of this insurance. A policy will be issued to every credit card holder and wife or husband who applies."

The policy when issued contained a similar insuring provision describing land, air or water common carriers and contained the exclusions referred to in the brochure quoted above. The policy contained an additional exclusion regarding, "*  *  * injury sustained while engaged in or taking part in aeronautics and/or aviation of any description or resulting from being in an aircraft except as provided in the definition of 'injury' of the policy." The policy is described as a limited policy and advises the insured to read it carefully.

The facts disclose a method of doing business somewhat different than that traditionally employed in the sale of insurance. The facts also reveal the potentially knotty problem of distinctions between representations and advertising inducement. *Barth v. State Farm Fire and Casualty Co.* (Pa. 1969), 257 A.2d 671.

● 1  Much of the argument of the parties is devoted to a discussion of the question of whether the insurance policy as issued and delivered was or was not the only agreement between the parties. Defendant relies on the general rule that the provisions of the policy including coverage and exclusions set forth the only rights of the parties and plaintiff's cause of action is not supported by such policy. (*Metropolitan Life Insurance Co.*

*v. Whitler*, 172 F.2d 631.) Plaintiff concedes that his cause of action is contrary to the terms of the policy but insists that there was a prior contract between the parties which in accord to well established exceptions to the rule supports his claim that coverage exists.

It would appear that at least for some purposes and with respect to some aspects of the relation between insuror and insured the brochure and application may constitute a contract. See *Klos v. Mobil Oil Co.* (N.J. 1969), 259 A.2d 889, a case involving the same type of policy as that involved in the instant case, although the question was effective date of coverage rather than extent thereof. As is pointed out in the *Klos* case, the prospective insured becomes eligible for the insurance by his membership in the class, *i.e.* credit card holder, and the insuror does not retain the customary option or discretion to accept or reject an application pursuant to underwriting considerations.

■■ However even if the brochure and application may be regarded as a preliminary contract such as is referred to as a binder in the insurance business, (*Springfield Fire & Marine Ins. Co. v. Hubbs-Johnston Motor Co.* (Tex. 1931), 42 S.W.2d 248 and *Republic Ins. Co. v. French* (10th Cir. 1950), 180 F.2d 796, we are unable to agree with plaintiff that any coverage was afforded by the terms of the agreement so entered into. The failure of the brochure to specify as an express exclusion injuries arising out of the operation of private aircraft does not mean that coverage therefore was afforded. An insuring provision itself may and usually does contain many limitations on the coverage afforded. In this case the language of the insurance offered as described in the brochure, refers to injuries while the insured is a passenger in a common carrier by air further defining such common carrier. The facts disclosed do not indicate that the insured's loss of life occurred within the terms of the general insuring provision. Nor does the absence of a private aircraft exclusion create any representation or state of facts from which it may be reasonably inferred that it was the intention of either party to provide for such coverage.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.