Mildred WILLIAMS, et al., Plaintiffs,

v.

CARNIVAL CRUISE LINES, INC.,
Defendant and Third–Party
Plaintiff,

Brown Brothers & Company Limited,
Third–Party Defendant.

No. 92–900–CIV.

United States District Court,
S.D. Florida.

Nov. 15, 1995.

Thomas E. Backmeyer, Hoppe, Backmeyer & Stokes, P.A., Miami, FL, for Plaintiffs.

Thomas Emerson Scott, Jr., Davis, Scott, Weber & Edwards, Miami, FL, Arthur Joel Levine, Carnival Cruise Lines, Miami, FL, Dante Mattioni and Eugene Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for Defendant Carnival Cruise Lines.

### ORDER

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court upon Defendant Carnival Cruise Lines' Motion for Summary Judgment as to Plaintiffs who Have Asserted Only Fear or Fear and Seasickness Claims (D.E. 358).

### BACKGROUND

On January 17, 1988, the MS TROPICALE, operated by Defendant Carnival Cruise Lines, Inc. ("Carnival"), set sail from the Port of Los Angeles at its regularly scheduled time for a several day cruise along the Pacific Coast south of Los Angeles. During this cruise, the MS TROPICAL encountered a severe storm. As a result, 207 passengers brought this action against Carnival asserting claims for negligence and breach of contract under general maritime law.

Defendant claims that of the 207 Plaintiffs, 141 have failed to demonstrate any definite and objective physical injuries. Specifically, 47 Plaintiffs answered Interrogatories stating that their only injury was fear and 94 Plaintiffs answered Interrogatories stating that their only injury was fear and seasickness. It is undisputed that none of these Plaintiffs sought medical care, nor did they lose any income due to their alleged injuries. Defendant seeks summary judgment as to these 141 Plaintiffs under the theory that there can be no recovery for negligent infliction of emotional distress under the undisputed facts in this case.

### DISCUSSION

### I. STANDARD OF REVIEW

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of persuasion to demonstrate that there is no genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial burden of demonstrating that there is no genuine issue of material fact, the burden shifts to the nonmoving party to provide evidence from the discovery devices listed in Rule 56(c) other than pleadings, demonstrating that a genuine issue of material fact exists. *Id.* The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only facts from which a reasonable jury could return a verdict for the nonmoving party will preclude the entry of summary judgment on a properly supported motion for summary judgment. *Id.*

## II. GENERAL MARITIME LAW GOVERNS

■ Defendant maintains that Florida law governs this Court's determination of the merits of Plaintiffs' claims. Defendant argues that there is no uniform federal rule regarding the issue of a passenger's right to recover damages for purely emotional injuries sustained as a result of another's actions. Thus, Defendant claims that this Court must look to Florida law, which applies the "impact rule" in evaluating Plaintiffs' claims for emotional distress.[1]

■ The undersigned disagrees. Plaintiff correctly asserts that "general maritime law, where not previously developed, is determined by judicial analysis of congressional enactments in the field of maritime law, relevant state legislation and state common law. *Miles v. Apex Marine Corp.,* 498 U.S. 19, 27, 111 S.Ct. 317, 322, 112 L.Ed.2d 275 (1990)." Plaintiff's Memorandum of Law in Opposition to Carnival Cruise Lines' Motion for Summary Judgement ("Plaintiff's Memo") at 2. This Court must consider federal legislation and common law from all sources, not just the forum state. "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864–65, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986). "Moreover, the Supreme Court recognized that maritime law, in the absence of a statute, is 'developed by the judiciary.'" *Ellenwood v. Exxon Shipping Co.,* 795 F.Supp. 31 (D.Me.1992) (quoting *East River,* 476 U.S. at 864, 106 S.Ct. at 2298).

■ "We should also, where possible, be guided by the twin aims of maritime law:

achieving uniformity in the exercise of admiralty jurisdiction and providing special solicitude to seamen." *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1407 (9th cir.1994). Plaintiff correctly states that general maritime law, when applied to seamen, must conform to the Jones Act. Plaintiffs' Memo at 5. The Jones Act[2] regulates personal injury claims involving seamen. In *Lindgren v. United States,* 281 U.S. 38, 44, 50 S.Ct. 207, 210, 74 L.Ed. 686 (1930), the Supreme Court held that the Jones Act "is one of general application intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution, and necessarily supersedes the application of the ... the statutes of the several States."

■ Although plaintiffs in this case are not seamen and the Jones Act does not directly apply, this Court will "look to these maritime statutes for guidance in determining what remedies should be available in an admiralty case, such as this one." *Chan* at 1407–08. This Court recognizes the importance of uniformity within maritime law, which the Supreme court emphasized in *Miles.* In *Miles,* "the Supreme Court sought to develop a 'uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA (Death On the High Seas Act), the Jones Act, or general maritime law.'" *Chan* at 1408 (quoting *Miles,* 498 U.S. at 32, 111 S.Ct. at 325).

Moreover, the Jones Act fully incorporates by reference the Federal Employers' Liability Act ("FELA"). *Miles,* 498 U.S. at 32, 111 S.Ct. at 325; *Chan* at 1408. "Because we look to case law developed under the Jones Act in guiding the development of the general maritime law, we find the cases interpreting FELA instructive...." *Chan* at 1408. As Plaintiffs note, many cases interpreting claims under the Jones Act for negligently inflicted emotional injuries cite for support directly to cases interpreting FELA. *See Id.; Gaston v. Flowers Transp.,* 866 F.2d 816 (5th Cir.1989); *Ellenwood v. Exxon Shipping Co.,* 795 F.Supp. 31 (D.Me.1992).

---

**1.** *See infra* Part III.

**2.** 46 U.S.C.App. Sec. 688.

## III. THE ZONE OF DANGER TEST

Within the common law, there are three tests for evaluating claims for negligent infliction of emotional distress. The first is the "physical impact" test. The impact rule requires that "before a plaintiff can recover damages for emotional distress cased by the negligence of another, the emotional distress suffered must flow from physical injuries that the plaintiff sustains in an impact." *R.J. and P.J. v. Humana of Florida, Inc.,* 652 So.2d 360 (Fla.1995) (quoting *Reynolds v. State Farm Mut. Auto. Ins. Co.,* 611 So.2d 1294, 1296 (Fla. 4th DCA 1992), *review denied,* 623 So.2d 494 (Fla.1993)).

■■ The second test is the "zone of danger" test which "limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Consolidated Rail Corp. v. Gottshall,* —— U.S. ——, ——, 114 S.Ct. 2396, 2406, 129 L.Ed.2d 427 (1994). The third test is the "relative bystander" test in which the plaintiff must have been located near the scene of the accident and have observed the accident while it occurred. *Gottshall,* at ——, 114 S.Ct. at 2407 (quoting *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968)). Moreover, the plaintiff must have a close relationship with the victim. *Id.*

The issue in this case is which test applies under the general maritime law. In *Gottshall,* the Supreme Court adopted the "zone of danger" test to evaluate claims for negligent infliction of emotional distress under FELA. In rejecting the physical impact test, the Court explained that there is no reason "to allow an employer to escape liability for emotional injury caused by the apprehension of physical impact simply because of the fortuity that the impact did not occur. And the physical impact test has considerably less support in the current state of the common law than the zone of danger test." *Id.,* —— U.S. at ——, 114 S.Ct. at 2411.

In *Chan,* the Ninth Circuit recognized the *Gottshall* decision and held that claims for emotional distress are cognizable under admiralty law. *Chan* at 1409. The Court stated that there is "no reason to disallow meritorious emotional distress claims under the general maritime law when they are available to railroad workers under FELA and to plaintiffs in nearly all states." *Id.* However, the Court declined to decide what threshold standard plaintiffs must meet in bringing claims for negligent infliction of emotional distress.[3]

Insofar as the Supreme Court has adopted the zone of danger test for FELA emotional distress cases, this Court believes that the same test should be applied in cases under the Jones Act and under general maritime law dealing with the same issue. In adhering to the goal of uniformity in the exercise of admiralty jurisdiction, this Court finds that *Gottshall* is instructive on the question of which test to apply. Therefore, this Court adopts the zone of danger test for negligent infliction of emotional distress cases under the general maritime law.

## IV. THE PHYSICAL MANIFESTATION TEST WITHIN THE ZONE OF DANGER TEST

■■ Although *Gottshall* held that the zone of danger test is the applicable standard that must be met in cases for negligent infliction of emotional distress, the Court did not decide whether objective physical manifestations are required for recovery. *Gottshall,* —— U.S. at —— n. 3, 114 S.Ct. at 2417 n. 3. The Court noted that many jurisdictions that follow the zone of danger test, "also require that a plaintiff demonstrate a 'physical manifestation' of an alleged emotional injury, that is, a physical injury of effect that is the direct result of the emotional injury, in order to recover." *Id.,* at —— n. 11, 114 S.Ct. at 2407 n. 11 (quoting *Garvis v. Employers Mut. Casualty Co.,* 497 N.W.2d 254 (Minn.1993)).

**3.** In *Chan,* neither the impact test, nor the zone of danger test, nor the bystander test allowed for recovery because the plaintiffs were not physically present on the cruise with their parents. Thus, the Court did not need to adopt a specific test. The Court remanded part of the case where the plaintiff was present at the accident, and directed the district court to examine which theory of recovery would be appropriate under maritime law. *Id.* at 1410.

Defendant maintains that this Court should follow the majority and apply the physical manifestation test to the facts of this case. The undersigned agrees.

The *Restatement (Second) of Torts* follows the physical manifestation test in requiring proof of physical injury that is a direct result of the emotional injury:

> If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

*Restatement (Second) of Torts*, § 436A (1965). Comment c to the *Restatement* illustrates the test:

> A negligently manufactures and places upon the market cottage cheese containing broken glass. B purchases a package of the cheese and upon eating it finds her mouth full of glass. She is not cut or otherwise physically injured, and she succeeds in removing the glass without bodily harm; but she is frightened at the possibility that she may have swallowed some of the glass. Her fright results in nausea and nervousness lasting for one day, and an inability to sleep that night, but in no other harm. A is not liable to B.

*Id.*, comment c. Comment c further provides that if B had suffered long continued nausea or headaches, that may amount to physical illness, which is bodily harm.

Comment b to the *Restatement* rule discusses the traditionally favored policy rationales for requiring physical injury. Among the most important is that "a physical harm requirement furnishes a 'guarantee of genuineness' to the fact-finder, thus limiting the prospects for a flood of fraudulent claims." *Ellenwood* at 34.

In addition, a majority of states follow the *Restatement* rule by requiring a physical manifestation of an emotional injury in order to recover for negligent infliction of emotional distress. In *Ellenwood,* a district court in Maine held that a "plaintiff alleging negligent infliction of emotional distress under the general maritime law must prove an accompanying physical injury." *Id.* at 34.

In *Petition of the United States,* 418 F.2d 264 (1st Cir.1969), the Court, found that the plaintiff in an action under the general maritime law, met the standard for physical injuries resulting from his emotional injuries. After being thrown into the water as his boat capsized, the plaintiff developed psychoneurosis. *Id.* at 269–70. This was established by expert testimony which proved that he was extremely nervous, frightened, perspired a great deal, talked of suicide and had nightmares of the sinking. *Id. See also Petition of Moore–McCormack Lines,* 184 F.Supp. 585 (S.D.N.Y.1960), *aff'd sub nom, Moore–McCormack Lines, Inc. v. Richardson,* 295 F.2d 583 (2d Cir.1961), *cert. denied,* 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962) (allowing recovery by a seaman for emotional distress which was manifested by schizophrenia, post-traumatic stress, and neurosis); *Ainsworth v. Penrod Drilling Co.,* 972 F.2d 546 (5th Cir.1992) (barring recovery for emotional distress where the plaintiff suffered "trivial" injury including an upset stomach, headache and pulled muscles).

■ In this case, the 141 plaintiffs which are the subject of this summary judgment motion, complain only of fear and/or seasickness which in most cases lasted no more than a few days. None of these plaintiffs have sought medical care, nor have they complained that their emotional distress has interfered with their daily performances. Defendant correctly asserts that the record is undisputedly devoid of any evidence of physical injury to these plaintiffs. Although these plaintiffs meet the first part of the zone of danger test in that they were placed in immediate risk of physical impact by Defendant's conduct, in applying the physical manifestation test, these 141 plaintiffs are not entitled to recover for their emotional distress, without any physical manifestation of that distress. Therefore, summary judgment as to these plaintiffs is appropriate.

### CONCLUSION

After careful consideration and for the foregoing reasons, it is hereby

**ORDERED** that Defendants Carnival Cruise Lines' Motion for Summary Judgment is **GRANTED.**

**DONE AND ORDERED.**