**John HUTTON and Mary Hutton, individually and behalf of all those similarly situated, Plaintiffs,**

v.

**NORWEGIAN CRUISE LINE LIMITED, d/b/a Norwegian Cruise Line, a Bermuda corporation, Defendant.**

No. 99–2383–CIV.

United States District Court, S.D. Florida.

Jan. 4, 2001.

George G. Mahfood, Leesfield, Leighton, Rubio & Mahfood, Miami, FL, for Plaintiffs.

Jose Antonio Llerena, Jorge L. Fors, P.A., Coral Gables, FL, Curtis J. Mase, Catherine J. MacIvor, Mase & Gassenheimer, Miami, FL, Jennifer Lynn Anderson, Miami, FL, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MORENO, District Judge.

Plaintiffs John and Mary Hutton have filed this class action negligence suit against Defendant Norwegian Cruise Line Limited for injuries sustained when the cruise ship *Norwegian Dream* collided in the English Channel with the cargo ship *Ever Decent.*

Plaintiffs have a pending motion for class certification of the 1,744 passengers aboard the ship. Defendant seeks summary judgment against the named Plaintiff and any other class members who fail to demonstrate a non-trivial physical manifestation of an emotional injury under the "zone of danger" test. Because this Court finds that the Plaintiffs' claims meet all of the elements of the zone of danger test, Defendant's Motion for Summary Judgment is DENIED.

## I. BACKGROUND

On August 24, 1999, at 12:50 a.m., during a twelve day North Sea cruise, the *Norwegian Dream* collided with the cargo ship *Ever Decent* in the English Channel. The *Norwegian Dream* was initially impacted on its bow (front) and then again alongside the forward starboard (right) side of the vessel. At the time of the accident there were 1,744 passengers aboard.

Immediately following the accident the captain closed the watertight doors, sounded a "Code Delta" alarm indicating possible damage to the ship and ordered all passengers and crew to their muster (emergency) stations, which for most passengers was on the seventh deck. Passengers were released from the muster stations within an hour and the ship continued to Dover, England, as planned. No significant physical injuries were reported on the ship.

The named Plaintiffs in this action are John and Mary Hutton, 77 and 72 respectively. The Huttons were sleeping in their cabin at the time of the accident and were thrown into the bulkhead and on to the floor when the ships collided. After the collision they immediately went up to their muster stations where, cold and frightened, they observed the *Ever Decent* burning.

John Hutton claims that because of the accident he suffered from: (1) a sprained knee; (2) aching back, hips, and knee; (3) acute bronchitis five days after the collision resulting in nausea, belly ache, and a general feeling of having been beaten up; and (4) ongoing sleep disruption.

Mary Hutton claims that because of the accident she suffered from: (1) aching knees, back, neck, and shoulders; (2) sore and swollen knees; (3) stiffness all over her body; and (4) ongoing sleep troubles.

Plaintiffs have submitted affidavits of additional passengers who claim to have been injured by the collision. Most of the injuries can be described as "emotional injuries." These passengers uniformly complain of severe fright, trouble sleeping, nerves, headaches, depression and shak-

ing. Many passengers also complained about aches, bumps, and bruises of their neck, back, and knees associated with the collision.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. *Fed.R.Civ.P.* 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

The issue before the Court on summary judgment is whether the "zone of danger" test for negligent infliction of emotional distress includes an additional prong requiring a physical manifestation of an alleged emotional injury.

 Defendant argues that a negligent infliction of emotional distress claim not only needs to pass the zone of danger test, it must result in a physical manifestation of the alleged emotional injury. Accordingly, Defendant seeks summary judgment on all claims for which Plaintiffs have failed to show a physical manifestation of a psychic injury. A physical manifestation is defined as a "physical injury of effect that is the direct result of the emotional injury." *Consolidated Rail Corporation v. Gottshall*, 512 U.S. 532, 549 n. 11, 114 S.Ct. 2396, 2407 n. 11, 129 L.Ed.2d 427 (1994).

Plaintiffs argue that the Supreme Court in *Gottshall*, a case that is authoritative in maritime disputes, did not adopt or incorporate a physical manifestation requirement as part of the zone of danger test. Plaintiffs thus contend that a physical manifestation requirement would be contrary to the *Gottshall* holding.

### A. The Zone of Danger Test

 The parties do not dispute that the zone of danger test applies to their dispute. The zone of danger test is one that recognizes that "a near miss may be as frightening as a direct hit." *Gottshall*, 512 U.S. at 547, 114 S.Ct. at 2406. It allows for the recovery of emotional injury if the plaintiff was placed in the immediate risk of physical harm by the defendant's negligent conduct. *See id.* Under this test no actual contact or impact is necessary for recovering should a court deem the plaintiff was within the zone of danger.

The claims that are the subject of this motion are governed by the maritime law of the United States. Though *Gottshall* dealt with emotional distress claims under FELA, courts have analogized the remedial nature of FELA and maritime law and found that meritorious emotional distress claims should be allowed under general maritime law. *Chan v. Society Expedi-*

*tions, Inc.* 39 F.3d 1398, 1409 (9th Cir. 1994); *Williams v. Carnival Cruise Lines, Inc.,* 907 F.Supp. 403, 405 (S.D.Fla.1995).

### B. The Zone of Danger Test Has No Physical Manifestation Requirement

■ There is competing case law about whether the zone of danger test includes a physical manifestation requirement in maritime law. *Compare In re Complaint of Clearsky Shipping Corp.,* No. CIV.A. 96–4099, 1998 WL 560347, at *2–3 (E.D.La. Aug.28, 1998), *Pullman v. Bouchard Transportation Co., Inc.,* No. CIV.A. 99–3008, 2000 WL 1818503, at *3 (E.D.La. Dec. 12, 2000), *with Williams v. Carnival Cruise Lines, Inc.,* 907 F.Supp. 403, 405 (S.D.Fla.1995). This Court finds the opinion of the *Clearsky* court persuasive and rejects the physical manifestation requirement.

The physical manifestation requirement is essentially a tool through which a court can evaluate the authenticity and the seriousness of a plaintiff's alleged emotional injuries to bar claims where the court determines there was not a sufficient injury. *See Williams,* 907 F.Supp. at 407. Such tests that enable a court to evaluate the quality of emotional injuries have been deemed "genuineness tests."

Defendant relies on *Williams,* a case where passengers brought an action against a cruise ship company for sailing through a severe storm. In granting summary judgment, the magistrate judge reasoned that a physical manifestation requirement would guarantee the genuineness of the claims. *Id.* The *Williams* court relied on a footnote in *Gottshall* that explained that many jurisdictions require a physical manifestation. *Id.* at 406 (quoting *Gottshall,* 512 U.S. at 549 n. 11, 114

S.Ct. at 2407 n. 11). No where in the *Gottshall* opinion, however, does the majority require a physical manifestation of emotional distress claims.

The *Clearsky* court reasoned that such tests were rejected in *Gottshall.* Chief Judge Sear stated, "The Gottshall court concluded that this genuineness analysis would not assist in separating valid from invalid emotional distress claims because it would 'force judges to make highly subjective determinations' about claims that 'are far less susceptible to objective medical proof than are their physical counterparts.'" *Clearsky,* 1998 WL 560347, *2–3 (quoting *Gottshall,* 512 U.S. at 552, 114 S.Ct. at 2409). In *Gottshall,* the circuit court had developed a test for evaluating emotional distress claims that was not rooted in common law, required courts to evaluate the genuineness of claims, and relied on foreseeability as a meaningful limitation on liability. *Gottshall,* 512 U.S. at 552, 114 S.Ct. at 2408–9. One of the reasons the Supreme Court rejected this test as "fatally flawed" was due to the requirement that a court had to make a determination about the genuineness of the claims. *Id.*

As this Court agrees with the reasoning in *Clearsky* and holds that the physical manifestation requirement is inconsistent with the holding of *Gottshall,* Plaintiffs with meritorious emotional distress claims can recover. When the two ships collided Plaintiffs were certainly within the zone of danger. They were frightened and were placed in immediate risk of physical harm by the Defendant's negligent conduct. There is even evidence that Plaintiffs have suffered some physical injuries. Accordingly, Summary Judgment is inappropriate.